## MARY HENDRICKSON

### *vs.*

## STANDARD OIL COMPANY.

*Appeals in equity*: *final orders; orders sustaining demurrers,
when appealable. Nuisances*: *noxious vapors; storage of
inflammable oils and barrels. Pleading in equity*:
*positiveness; information and belief,
when sufficient.*

By section 26 of Article 5 of the Code, appeals in equity
cases are allowed from final decrees or orders in the nature of
final decrees.                                           p. 581

The right of appeal from courts of equity exists only in those
instances in which it is expressly conferred by statute.    p. 581

When a court of equity refuses to grant an injunction accord-
ing to the prayer of the bill or petition, an appeal may be taken
from such refusal by any party aggrieved.               p. 581

An order in the nature of a final decree is one which finally
settles some disputed right or interest of the parties.    p. 582

The fact that an order appealed from merely sustained a de-
murrer to specific paragraphs of a bill for an injunction, with-
out dismissing the bill to that extent, does not affect the right
to an appeal from the order.                            p. 582

Where the essential point of the objections urged against a
bill for an injunction could not be obviated by amendment, an
order sustaining a demurrer to certain paragraphs of the bill,
without granting leave to amend, determines that the plaintiff
was not entitled to maintain the suit with respect to the particu-
lar causes of the injury, to which these paragraphs applied; and
from such an order an appeal will lie.                   p. 582

The averments, in a bill for an injunction, that the plaintiff
is subjected to injuries in his personal and property interests,
by the discharge, from the defendant's factory, of large quanti-
ties of noxious, foul-smelling and injurious vapors, if duly

proven, are sufficient to invoke the restraining power of a court of equity.                                      pp. 584-585

Whether or not the storage of a large quantity of inflammable oil and empty oil barrels, near the property of a plaintiff, constitutes a nuisance, which a court of equity, upon proper allegations and proof, will restrain by injunction, depends upon the facts of each particular case.                    pp. 585-587

In equity, the rule requiring positiveness of pleading may be relaxed, so as to permit an allegation on information and belief, where the fact is presumably not within the knowledge of the plaintiff, but is within that of the defendant.        p. 588

*Decided June 24th, 1915.*

Appeal from the Circuit Court for Baltimore County. (In Equity.)   (DUNCAN, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Wm. Pinkney Whyte, Jr.,* and *T. Scott Offutt,* for the appellant.

*D. G. McIntosh,* for the appellee.

URNER, J., delivered the opinion of the Court.

The bill of complaint in this case alleges in the first and second paragraphs that the plaintiff is the owner of leasehold estates in five lots of ground in Canton, Baltimore County, improved with buildings of which four have heretofore been occupied as residences and one has been used both as a saloon and dwelling.   It is alleged in the third paragraph of the bill that the defendant, a corporation engaged in the manufacture, sale and shipment of kerosene, gasoline, crude oil and the various products of petroleum

and other mineral oil, laid and maintains certain pipe lines, for the conveyance of oil, in the street abutting upon the plaintiff's property, and that the lines are so constructed and operated that large quantities of crude oil and other substances leak therefrom and percolate through the intervening soil into and upon the premises of the plaintiff, giving rise to disagreeable, noxious and unhealthy odors, and that in constructing its pipe lines the defendant so changed the grade of the street that the surface water from the plaintiff's and other adjacent lands, which had always from time immemorial been accustomed to flow down, over and across the street, was in consequence thereof made to flow over, into and upon the plaintiff's ground, so that the buildings thereon are rendered mouldy and unhealthy, the cellars flooded with oily and foul-smelling water, the walls and foundations have become decayed and undermined, and the houses unfit for habitation or any ordinary or reasonable use, and so that the plaintiff was compelled to remove from one of the houses, which had been occupied by her as a home, by reason of ill-health caused by the conditions described, and others mentioned later in the bill, of which conditions the plaintiff complained to the defendant, but without avail.

The fourth paragraph of the bill avers that the defendant operates a factory, near the land of the plaintiff, for the manufacture of its products, and that it wrongfully and in utter disregard of the plaintiff's rights, causes large quantities of noxious, offensive and injurious gases and vapors to be emitted from its factory and to spread over and upon the plaintiff's premises, and to permeate and taint the air, so that the plaintiff and her tenants, in the occupation of her houses, become sickened, and the reasonable enjoyment of her property is thereby prevented.

It is charged in the fifth paragraph that immediately in front of the plaintiff's lots, on South Clinton street, the defendant maintains a large and unsightly tank, holding many thousands of gallons of oil, and now containing many gallons of gas oil, a highly explosive and dangerous fluid, which is

pumped into the tank through the pipes located beside the plaintiff's property, and that adjacent to the tank there are stored by the defendant thousands of oil barrels, without covering of any kind and surrounded by a wire fence, and at the rear of the plaintiff's premises the defendant maintains a large shed for the storage of grease, oil and other inflammable substances, and, as the plaintiff is advised, the storage of such highly explosive and inflammable oils, and other petroleum products, greases and oil barrels, so close to the plaintiff's dwelling houses, and those of other persons, constitutes a public nuisance, and by reason thereof her property is greatly damaged, rendered less valuable for dwelling purposes, difficult to rent and dangerous for occupancy in the event of fire or lightning.

By the sixth paragraph of the bill it is alleged that as a result of the conditions previously described the plaintiff is deprived of the reasonable use and enjoyment of her property, is unable to reside there herself, or to secure desirable tenants, and is compelled to accept greatly reduced rentals, while, much of the time, the property can not be rented at all.

The seventh paragraph avers that the defendant has recently purchased land adjacent to that of the plaintiff, and the latter is informed and believes that the defendant intends to construct in immediate proximity to the plaintiff's houses a tank in which will be stored vast quantities of highly inflammable and explosive oils, whereby, if permitted, the value of the plaintiff's property will be entirely destroyed.

The bill concludes with the allegation that the plaintiff is without remedy save through the intervention of a court of equity, and prays that the defendant may be restrained by injunction from: (*a*) so operating or maintaining its pipes as to cause oil to flow into or upon the plaintiff's property; (*b*) or so as to cause water to flow into, over and across the land of the plaintiff; (*c*) from storing any explosive oil or any highly inflammable fluid on its property adjacent to the plaintiff's houses; (*d*) from continuing to store the large

pile of empty oil barrels, mentioned in the bill, without ade-
quate measures to prevent them from being set on fire by
accident or design; (*e*) from storing large quantities of
greases, oils and other inflammable and explosive substances
in the rear of the plaintiff's property, without taking ade-
quate measures against fire and its consequences; (*f*) from
so operating its factory as to cause noxious gases or vapors
to be emitted therefrom and to interfere with the reasonable
use and occupation of the plaintiff's buildings and prem-
ises.   There was also a prayer for general relief.   The bill
was accompanied by exhibits showing the sources of the
plaintiff's title.

In pursuance of an order of Court providing for the issu-
ance of an injunction, as prayed in the bill, unless cause to
the contrary were shown by the defendant on or before a
designated day, a demurrer to the bill and each of its para-
graphs was interposed.   After a hearing upon the demurrer,
it was sustained as to the fourth, fifth and seventh para-
graphs of the bill and overruled as to the remaining para-
graphs.   From the order passed by the Court below to that
effect the plaintiff has taken this appeal.

The first question to be decided is whether an order sus-
taining a demurrer to only part of a bill of complaint is ap-
pealable.

An appeal is allowed by statute in equity cases "from any
final decree, or order in the nature of a final decree."   Code,
Article 5, section 26.   It is also provided that "Whenever
any court having equity jurisdiction shall refuse to grant an
injunction according to the prayer of the bill or petition
filed in the cause, an appeal may be taken from such refusal
by any party aggrieved."   *Ib.* section 31.   The right of
appeal from courts of equity exists only in those instances
in which it is expressly conferred by statute.   *Peoples* v.
*Ault,* 117 Md. 635; *Dillon* v. *Ins. Co.,* 44 Md. 386; and in
the case before us the appeal must be sustained, if at all, by
reference to one or both of the provisions we have quoted.

The fact that the order appealed from merely sustained the demurrer to the specified paragraphs of the bill, without dismissing the bill to that extent, does not affect the question as to the appealability of the order.  In *McNiece* v. *Eliason,* 78 Md. 168, there was an appeal from an order sustaining a demurrer to a bill of complaint in its entirety upon grounds which precluded the maintenance of the suit.  A motion to dismiss the appeal was filed upon the theory that the order was not final.  In overruling the motion, this Court said: "It is true, this order does not in terms dismiss the bill, but that was its necessary result.  It denied the relief sought, and there was no other course open to the appellant.  *Hazelhurst* v. *Morris et al.,* 28 Md. 71; *Waverly Mutual Building Asso.* v. *Buck,* 64 Md. 343."  The present order, in sustaining the demurrer to the fourth, fifth and seventh paragraphs of the bill, without granting leave to amend, as the essential point of the objections urged could not be obviated by amendment, determined that the plaintiff was not entitled to maintain the suit with respect to the particular causes of injury to which those paragraphs referred.  In so far as the opportunity of securing relief by injunction from the conditions thus excluded was concerned, the order had the effect of virtually dismissing the bill.  The case, however, was to proceed upon the allegations as to which the demurrer was overruled, and the inquiry is whether, in view of this fact, an appeal from the order sustaining the demurrer to part of the bill is premature.

As repeatedly defined by this Court, "an order in the nature of a final decree," from which an appeal may properly be taken, is "one which finally settles some disputed right or interest of the parties."  *Chappell* v. *Funk,* 57 Md. 472; *Dillon* v. *Mutual Ins. Co.,* 44 Md. 395; *Hill* v. *Reifsnider,* 39 Md. 431; *Ware* v. *Richardson,* 3 Md. 555.

It was held in *Peoples* v. *Ault,* 117 Md. 634-637, that an order *overruling a plea* to part of a bill was not a proper subject of appeal.  In that case the plea had attempted to set up the bar of the statute of limitations to a portion of the plain-

tiff's claim, and there was an answer filed as to the remainder. The order from which the appeal was taken overruled the plea with leave to the defendant to file an amended or supplemental answer. The appeal was dismissed on the ground that such an order was not final in its nature. It was not an ultimate determination of any right or liability involved in the suit. Notwithstanding the ruling on the defendant's plea, the decree eventually passed in the case might have been wholly in his favor. The same considerations apply to an order overruling a demurrer to part of a bill. *Peoples* v. *Ault, supra; Somerset Rapid Transit Company's Case, ante* page 371. By such an order the scope and direction of the case may be affected, but the question of actual liability is left for adjudication in the final decree, upon appeal from which an interlocutory order of that character is reviewable. Code, Article 5, section 28. The rule has been adopted, however, that an order overruling a demurrer to an entire bill is appealable upon the theory that such an order finally determines the right of the plaintiff to proceed with the case stated in the bill, and imposes upon the opposite party the necessity of making defense. *Chappell* v. *Funk, supra; Hecht* v. *Colquhoun,* 57 Md. 563; *Hyattsville* v. *Smith,* 105 Md. 318; *Darcey* v. *Bayne,* 105 Md. 365.

An order *overruling* a demurrer to *part* of a bill of complaint is altogether different in its effect from one which *sustains* such a demurrer, especially where, as in this case, the specified causes of injury from which relief is sought are distinct and separable. If the demurrer filed by the defendant had been *overruled* as to the fourth, fifth and seventh paragraphs of the bill, the plaintiff's right to an injunction against the continuance of the conditions therein alleged to exist would have remained undetermined. A further decree would have been necessary to afford her the desired relief, and this might have been precluded by the proof as to the facts. But with the demurrer *sustained* as to those paragraphs, the injuries to which they refer are thereafter disregarded for the purposes of the issues to be joined and de-

cided.  No answer is required, no evidence is admitted and
no subsequent decree is passed by the trial Court in refer-
ence to the averments of fact thus eliminated.  The rights
dependent upon those allegations are as completely disposed
of, in respect to the particular remedy proposed, as if they
had been embodied in a separate bill to which a demurrer
was sustained.  If this had in fact been the course of the liti-
gation, there could be no question as to the right of appeal.
*McNiece* v. *Eliason, Chappell* v. *Funk, supra,* and the con-
siderations supporting such a right apply with equal force
to the order actually passed, to the extent to which it pre-
cludes the further prosecution of the suit.

The bill applied for an injunction against five causes of
injury, and, except as to two of them, the order sustaining
the demurrer refused in effect to entertain the application.
If the order had *in terms* refused the injunction as to the
conditions mentioned in the portions of the bill held demur-
rable, the case would be within the very letter of the statute,
already cited, allowing an appeal from an order refusing "to
grant an injunction according to the prayer of the bill or
petition."  The necessary effect of the order, however, is to
deny the plaintiff the full measure of injunctive relief for
which he prays in the bill, and the exigency has, therefore,
arisen, in fact, if not in technical form, in reference to
which the Act intended to afford a right of appeal.

For the reasons we have stated the motion to dismiss the
appeal must be overruled.

The first question to be considered on the demurrer is
whether the injuries to which the plaintiff claims, in the
fourth paragraph of the bill, to be subjected, in her personal
and property interests, by the discharge of "large quantities
of noxious, foul-smelling and injurious gases and vapors"
from the defendant's factory, constitute a ground for equi-
table relief by injunction.  It is charged, as already noted,
that these gases and vapors cause the plaintiff and her ten-
ants to become sickened, and prevent the reasonable enjoy-
ment of her property.  These averments, if duly proven, are

sufficient to invoke the restraining power of a court of equity. It has been definitely ruled that such protective relief will be granted at the suit of one who, in a material degree, is disturbed in the comfortable and reasonable occupancy and use of his property by offensive smoke, vapors or gases emitted from a factory located on the neighboring land. *Adams* v. *Michael,* 38 Md. 123; *Chappell* v. *Funk,* 57 Md. 465; *Dittman* v. *Repp,* 50 Md. 516. The question in all such cases was said by JUDGE ALVEY, in the case last cited, to be "whether the nuisance complained of, will or does produce such a condition of things as, in the judgment of reasonable men, is naturally productive of actual physical discomfort to persons of ordinary sensibilities, and of ordinary tastes and habits, and as, in view of the circumstances of the case, is unreasonable and in derogation of the rights of the complainant." A similar test is applied in actions at law for such nuisances. *Fertilizer Co.* v. *Spangler,* 86 Md. 568; *Susquehanna Fertilizer Co.* v. *Malone,* 73 Md. 268; *Euler* v. *Sullivan,* 75 Md. 616; *Belt R. Co.* v. *Sattler,* 100 Md. 306; *Carroll Springs Co.* v. *Schnepfe,* 111 Md. 430. In the opinion delivered in *Adams* v. *Michael* and *Fertilizer Co.* v. *Spangler, supra,* the statement by LORD ROMILLY, in *Crump* v. *Lambert,* L. R. 3 Eq. Cases, 409, was quoted to the effect that the law on this subject is "the same whether it be enforced by action at law or by bill in equity," and that there is "no distinction between any of the cases, whether it be smoke, smell, noise, vapors or water, or any gas or fluid. The owner of one tenement can not cause or permit to pass over, or flow into his neighbor's tenement any one or more of these things in such a way as materially to interfere with the ordinary comfort of the occupier of the neighboring tenement, or so as to injure his propery."

For the purposes of the demurrer in this case it is admitted that the defendant company is causing noxious gases and vapors to be emitted from its factory, and to spread over the plaintiff's property in such quantity as to injuriously affect the health of its occupants and the reasonable enjoy-

ment of their possession. The injury thus alleged is sufficiently serious and substantial, if proven, to entitle the plaintiff to the relief sought in this proceeding.

A different principle governed the case of *N. C. Ry. Co. v. Oldenburg and Kelly,* 122 Md. 236, where the object of the suit was to procure an injunction restraining the defendant railroad company from allowing smoke and noxious fumes to be discharged from its roundhouse to the injury of the plaintiffs' property and its occupants. The roundhouse was a necessary feature of a railway system which had been constructed under a franchise from the State, and it was held that as the injuries to the plaintiffs' private property rights, resulting from the operations complained of, were only consequential, and did not amount to a *taking* of his property for public use, within the meaning of the constitutional provision on the subject, no ground existed for the granting of an injunction, and the only remedy available was an action at law for damages. This principle does not apply to the facts here alleged.

The fifth paragraph of the bill contains the averments in relation to the large tank, located immediately in front of the plaintiff's property, on South Clinton street, and said to contain a highly explosive oil, which is pumped into the tank through pipes running immediately beside one of the plaintiff's houses. In the same paragraph are the allegations in reference to the storage, near the tank, of empty oil barrels in large numbers, without covering of any kind, and to the storage of grease, oils and other inflammable substances in a shed maintained by the defendant for the purpose in the rear of the plaintiff's premises. The objection to the presence of the empty oil barrels, and the other combustible materials mentioned, is apparently based upon the theory that they increase the danger of fire being communicated to the oil in storage and thus producing a disastrous explosion. The accumulation of the inflammable articles and products is associated with the storage of the oil in the charge that a public nuisance is thereby created. Special danger to the

plaintiff's interests is indicated in the allegation of the immediate proximity to her property of the pipe line through which the oil is conveyed.   The demurrer admits that the gas oil contained in the tank is a highly explosive fluid and that the storage of such material so close, as the position described, to the plaintiff's dwelling house property, in conjunction with the other conditions alleged in the bill, greatly impair the availability of the premises for the uses to which they have been devoted.

In a note appended to the case of *Whittemore* v. *Baxter Laundry Co.* (*Mich.*), reported in 52 L. R. A. (N. S.) 930, the general rule is stated, as deduced from the decisions there collected, that, "The storage of oil and gas is not a nuisance *per se*.   Whether or not such storage is a nuisance at all depends upon the locality in which the substance is stored, together with its proximity to other buildings and the circumstances of the case in general."

It was held in *O'Hara* v. *Nelson,* 71 N. J. Eq. 161, that a nuisance is created by the storage of large quanties of gasoline in a wooden building located in a city and in the midst of other buildings similarly constructed.   In *Whittemore* v. *Baxter Laundry Co., supra,* the maintenance of underground tanks holding twenty thousand gallons of gasoline within eleven feet of a dwelling on the adjacent lot was declared to be a nuisance.   The boring of an oil well within seventy feet of a dwelling was held to be restrainable in *McGregor* v. *Camden* (*W. Va.*), 34 S. E. 936, because of the inflammable and dangerous properties of the oil and gas which would issue from such a well if productive.   On the other hand, it was held in *Texas Co.* v. *Fisk* (Tex. Civ. Appls.), 129 S. W. 188, that the location of a fire-proof oil tank in a section where several such receptacles were already in existence and use could not properly be enjoined; and in *Harper* v. *Standard Oil Co.,* 78 Mo. Appls. 338, it was decided that the maintenance of oil tanks seventy-five feet from the property of the plaintiff did not constitute a nuisance, there being no evidence of anything to excite reasonable apprehension of fire, which was the only alleged source of danger.

The facts of each case must determine the question whether a nuisance exists against which a neighboring proprietor is justly and reasonably entitled to call upon a Court of equity for protection.  Upon the allegations of the bill in this case, in reference to the storage of explosive oil and inflammable materials, we think the conditions complained of are shown to be of such a character, and sufficiently serious in their effects upon the property and other interests of the plaintiff, as to justify her present suit.  In the face of the averments of fact to which we have referred, and in the absence of answer and proof, we could not properly hold that the plaintiff can have no redress in equity for such causes of danger and injury.

The views we have expressed enable us to deal very briefly with the allegations of the seventh paragraph of the bill, which relate to the prospective installation of a large tank, for the storage of inflammable and explosive oils, in immediate proximity to the plaintiff's houses.  This would undoubtedly be a nuisance against which the plaintiff would have a clear right to preventive relief.  The allegation as to this branch of the case is not in the form of a specific charge, but states only the plaintiff's information and belief in regard to the purpose of the defendant to locate the storage tank in the position indicated.  It is objected that this form of averment is not sufficiently definite; but it is to be observed that the bill was referring in this instance to the defendant's *intention,* and, as said in 16 *Cyc.* 230, the rule requiring positiveness of pleading "is relaxed so as to permit an allegation on information and belief where the fact is not presumably within the knowledge of plaintiff, but is within that of defendant."

As we are of opinion that the bill is not demurrable as to any of its paragraphs, the order appealed from will be reversed to the extent to which it sustains the demurrer, and the case will be remanded for further proceedings.

*Order reversed, in part, with costs to the appellant, and cause remanded.*